IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Julie Marie Martin, as the Personal Representative of the Estate of Thomas Erskine Martin, <br><br>     Plaintiff, <br><br> v. <br><br> Progressive Direct Insurance Company and USAA Casualty Insurance Company, <br><br>     Defendants. | C.A. No. 6:23-cv-06193-DCC <br><br><br><br> **OPINION AND ORDER** |

This matter is before the Court on Defendant Progressive Direct Insurance Company's ("Progressive") Motion for Summary Judgment. ECF No. 26. Plaintiff filed a Response in Opposition, and Progressive filed a Reply. ECF Nos. 34, 36. For the reasons set forth below, the Motion is granted.

**I. BACKGROUND**

On May 19, 2022, Thomas E. Martin ("Decedent") applied for a motorcycle insurance policy with Progressive through an online portal. Progressive then issued Policy No. 958274832 (the "Policy") to Decedent. ECF Nos. 26-1 at 1; 34 at 2–3. Decedent completed the application process through his mobile device. ECF No. 26-1 at 2; 34 at 2–3. During the application process, Decedent was transferred to DocuSign's platform to execute certain forms, including the underinsured motorist ("UIM") coverage selection/rejection form (the "UIM Form"). *Id.* The Parties do not dispute that during the application process Decedent at one-point selected UIM coverage limits of $25,000 per

person; $50,000 per accident; and $25,000 for property damage ("25/50/25"). *See* ECF Nos. 26-1, 34, 36. However, this selection is not reflected in the final declaration page, which indicates that Decedent rejected UIM coverage. *See* ECF No. 26-3.

On June 8, 2022, Decedent was involved in an accident and sustained fatal injuries. ECF Nos. 26-1 at 2; 34 at 1–2. On November 3, 2023, Plaintiff, as personal representative of Decedent's estate, filed an action in the Court of Common Pleas for Greenville County, South Carolina, seeking a declaration that UIM coverage is owed under the Policy. *See* ECF No. 1-1. On December 1, 2023, Progressive removed that case to this Court. *See* ECF No. 1. On October 30, 2024, Progressive filed the instant Motion for Summary Judgment. ECF No. 26. Plaintiff filed a response and Progressive filed a reply. ECF Nos. 34, 36. On September 4, 2025, the Court held a hearing on this Motion.[1] ECF No. 57. The Motion is now ripe for review.

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that

---

[1] The Court also addressed Plaintiff's Motions to Exclude and Plaintiff's Motions for Summary Judgment. ECF No. 57. These Motions were all denied. *Id.*

2

a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

3

> for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce evidence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

### III.  DISCUSSION

Under South Carolina law,[2] insurance carriers are required to:

> [O]ffer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute.

S.C. Code Ann. § 38-77-160. "The insurer bears the burden of establishing that it made a meaningful offer," and "[a] noncomplying offer has the legal effect of no offer at all." *Progressive Cas. Ins. Co. v. Leachman*, 608 S.E.2d 569, 571 (S.C. 2005) (citing *Butler v. Unisun Ins. Co.*, 475 S.E.2d 758, 759 (S.C. 1996); *Hanover Ins. Co. v. Horace Mann Ins.*

---

[2] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (citations omitted). "Under South Carolina choice of law rules, an insurance policy is governed by the law of the state in which the policy was issued." *Ranta v. Cath. Mut. Relief Soc. of Am.*, 492 F. App'x 373, 375 (4th Cir. 2012) (quoting *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184–85 (S.C. Ct. App. 1993)). There is no dispute that the Policy at issue here was issued in South Carolina or that South Carolina law applies. *See* ECF Nos. 26, 34. Accordingly, the Court applies South Carolina law.

4

*Co.*, 389 S.E.2d 657, 659 (S.C. 1990)). "'If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured.'" *Id.* (quoting *Butler*, 475 S.E.2d at 760).

> In general, for an insurer to make a meaningful offer of UIM coverage, (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*Id.* (citing *State Farm Mut. Auto Ins. Co. v. Wannamaker*, 354 S.E.2d 555, 556 (S.C. 1987)).

Under South Carolina law, if a statutorily compliant form "is signed by the named insured . . . , it is conclusively presumed that there was an informed, knowing selection of coverage and . . . the insurance company . . . is [not] liable . . . under the policy for the insured's failure to purchase optional coverage . . . ." S.C. Code Ann. § 38-77-350(B). The form must meet five requirements for this presumption to apply:

> (1) a brief and concise explanation of the coverage;
>
> (2) a list of available limits and the range of premiums for the limits;
>
> (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;
>
> (4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages;
>
> (5) the mailing address and telephone number of the insurance department that the applicant may contact if the

5

>> applicant has questions that the insurance agent is unable to answer.

S.C. Code Ann. § 38-77- 350(A).

Progressive argues that it is entitled to the statutory presumption that Decedent knowingly rejected UIM coverage and therefore summary judgment should be granted in its favor. ECF No. 26-1 at 3–4. Progressive contends that all the statutory requirements have been met, and the Policy cannot be reformed to include UIM coverage. *Id.* at 4. Plaintiff asserts that Progressive's argument fails because it's UIM Form is not compliant with South Carolina law. ECF No. 34 at 4–5, 30–31. Plaintiff further argues that a question of fact exists whether Decedent signed and/or executed the UIM Form and therefore knowingly rejected UIM coverage. *Id.* The Court addresses these arguments in turn.

**A. The UIM Form Complied with South Carolina Law**

Plaintiff contends Progressive's UIM Form was not compliant with South Carolina law in two respects: (1) the UIM Form did not provide an explanation of UIM coverage as required in S.C. Code § 38-77-350(A), and (2) Progressive's UIM Form was not approved by the director of insurance, or his designee, as described in S.C. Code § 38-77-350(A). ECF No. 34 at 4.

Under South Carolina law, insurance providers must use a form for all new applicants for insurance that provides certain information as to each optional coverage required to be offered, including UIM coverage. S.C. Code Ann. § 38-77-350. As outlined above, and as applicable to Plaintiff's challenges here, this includes: (1) an explanation of the coverage and (2) a list of available limits and the range of premiums for the limits. *See id*; *see also* ECF No. 34 at 4–5. In support of its Motion for Summary Judgment,

6

Progressive provided a signed copy of selection/rejection form as well as video of Decedent's application process and quote transaction on Progressive's website (the "Video").[3]  See ECF No. 26.  Plaintiff asserts that the Video demonstrates Decedent was never provided a meaningful, written offer of UIM coverage as there is no image showing Progressive using a form that provides an explanation of UIM coverage, and that Progressive also failed to provide a list of available limits and the range of premiums.  ECF No. 34 at 16–17.  Progressive asserts that it does not contend that the transaction shown in the Video constitutes a meaningful offer under S.C. Code Ann. § 38-77-350 but rather contends that the meaningful offer was provided to Decedent via the DocuSign portal in a statutorily compliant written offer form.[4]  ECF No. 36 at 3.

---

[3] The Court acknowledges Plaintiff's arguments about the authenticity of the signature appearing on the UIM Form (i.e., whether the form does have the Decedent's signature) and addresses her arguments in detail below.

[4] In their briefing and at the hearing, the Parties discuss whether the transaction as shown in the Video met the form requirements.  See ECF Nos. 26, 34, 36.  While the Video may shed some light on Decedent's intent to purchase UIM coverage and whether Decedent viewed the UIM Form, it does not answer whether the UIM Form itself was compliant with South Carolina law.  The Court notes that Progressive argues that the Video may show the quote process satisfies the Wannamaker elements.  See Wannamaker, 354 S.E.2d at 556 (explaining that to determine whether an insurer has complied with its duty to offer optional coverages, the Court must consider whether (1) the insurer's notification process is commercially reasonable, whether oral or in writing; (2) the insurer specifies the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer intelligibly advises the insured of the nature of the optional coverage; and (4) the insured is told that optional coverages are available for an additional premium).  However, the only discussion of Wannamaker and its applicability was made in a single line in Progressive's reply brief.  ECF No. 36 at 3. Neither Plaintiff nor Progressive provided detailed arguments concerning whether these elements were met.  See ECF Nos. 26, 34, 36.  While the Court is aware that adequate notice of optional coverage may sometimes be shown under the Wannamaker factors, the Court will not construct arguments on behalf of the parties that they have not elected to fully present themselves.  Accordingly, the Court focuses its analysis on the issues fully presented by the Parties: whether the UIM Form is compliant with South Carolina law; whether Progressive made a written, meaningful offer of UIM coverage to Decedent

7

The Court finds the evidence submitted by Progressive demonstrates that the UIM Form contains all the necessary elements under South Carolina law. Specifically, and as challenged here, the UIM Form provides a brief and concise explanation of the optional coverage and a list of available limits and the range of premiums for the limits. ECF No. 26-5 at 1, 3. While Plaintiff questions whether Progressive presented the UIM Form to Decedent, Plaintiff has presented no evidence to raise an issue of genuine material fact as to whether the UIM Form itself contained all the requisite information to comply with South Carolina law. *See* ECF No. 34.

Plaintiff also argues that Progressive has failed to carry its burden showing the UIM Form was submitted for approval by the director of insurance and when it was approved. ECF No. 34 at 4, 26, 30. In reply, Progressive cites to its responses to Plaintiff's interrogatories, which sets forth that the requested information regarding the UIM Form was publicly available to Plaintiff on South Carolina Department of Insurance's Website. ECF No. 36 at 10. At the hearing, Plaintiff admitted that she did not go to the website to see if the document was publicly available, nor did she check to see if she would be charged for accessing this information from the public website or if there were thousands of similar pages. Plaintiff argued, however, that she would not know whether she was looking at the right document on the website and emphasized that it is Progressive's burden to establish the UIM Form is in compliance with South Carolina law for the presumption to apply.

---

based on the UIM Form; and whether Decedent signed the UIM Form rejecting UIM coverage.

The Court finds Plaintiff's arguments unpersuasive. If material sought in discovery is readily obtainable from a public source, referring the interrogating party to the public source is an appropriate discovery response. *Gow v. Chrysler Corp.*, No. CIV.A. 86-3040, 1987 WL 13230, at *2 (E.D. Pa. June 30, 1987) ("[W]here public information is equally available to the parties it has been held that the party requesting information must acquire the information itself, and not through interrogatories."). At the hearing, Plaintiff's counsel made clear he has not made any effort to access the website to date, and Plaintiff has not demonstrated "it is inconvenient, burdensome or more expensive to obtain the requested documents from the public records." *Id.* While the Court recognizes it is Progressive's burden to show the presumption applies, Plaintiff cannot assert that Progressive has failed to carry this burden by failing to check the websites at all to see if what Progressive submitted was responsive to her interrogatory requests. Indeed, if upon review of the website Plaintiff had found the responses to be insufficient or unduly shift the burden of production to Plaintiff, then Plaintiff had many options for recourse including filing a motion to compel or request for admission. But Plaintiff did none of this. Progressive's responses to interrogatories pointing Plaintiff to equally available public information is sufficient to meet its discovery obligations.[5] Further, these publicly available documents show that Progressive did use a UIM Form approved by the director of insurance, or his designee, as described in S.C. Code § 38-77-350(A). Accordingly, the Court finds that the UIM Form is compliant with South Carolina law and turns to

---

[5] At the hearing, the Court found that copies of this information as submitted by Progressive was admissible for purposes of the Motion for Summary Judgment.

whether Decedent signed the UIM Form and, therefore, knowingly rejecting UIM coverage.

**B. Decedent Knowingly Rejected UIM Coverage**

Progressive argues that because Decedent signed the UIM Form discussed above, it is entitled to the statutory conclusive presumption that Decedent knowingly rejected UIM coverage, and the Policy cannot be reformed. ECF No. 26-1 at 4. In support of its Motion, Progressive submitted a copy of Decedent's application for insurance, the Video recording the of Decedent's application process and transaction on Progressive's website, the Policy's declaration page, the affidavit of Janeen Copic regarding the records in this transaction, and a copy of the UIM Form purportedly signed by Decedent.[6] *See* ECF No. 26. The crux of Plaintiff's argument opposing Progressive's Motion is that genuine questions of material fact exist as to whether Decedent purchased UIM coverage from Progressive or whether Decedent signed a UIM Form. ECF No. 34 at 4–25. The Court addresses these arguments in reverse order.

1. *Whether Decedent was Provided with and Signed the UIM Form*

The Court finds that Progressive has carried its burden at summary judgment to establish that Decedent viewed and signed the UIM Form. Progressive offers considerable evidence that Decedent digitally signed, agreed to, and was bound by the terms of the UIM Form after having the opportunity to review it. Progressive submitted the executed UIM Form as well as a sworn affidavit by its representative. *See* ECF Nos. 26-4, 26-5. The affidavit outlines Progressive's process for signing policy documents

---

[6] Plaintiff moved to exclude much of this evidence. *See* ECF No. 33. The Court, however, found that this evidence is admissible at this stage of litigation.

10

digitally through DocuSign, explains what would occur if Decedent had failed to properly sign the forms during the application process, and includes information concerning Decedent's e-signature on the form, such as DocuSign Certificate identification information confirming that Decedent signed the UIM Form.  *See* ECF No. 26-5. Progressive has shown that applicants may choose to electronically sign their insurance documents and if they do so, they will be transferred to DocuSign to complete the review and execution of all policy documents.  ECF No. 26-4 at 1–2.  If an applicant failed to properly sign the forms, he would be "kicked out" of the program and would have to sign the documents.  Progressive submitted evidence that Decedent in particular followed these procedures and electronically signed the UIM Form on May 19, 2022.  *Id.*

Plaintiff challenges whether Decedent actually affixed his signature to the UIM Form in this instance.  ECF No. 34 at 28.  Plaintiff, however, submitted no evidence that creates a genuine issue of material fact as to whether this signature was authentic.  *See* ECF No. 34.  Instead, Plaintiff's response brief relies heavily on the Video submitted by Progressive and its arguments that the majority of Progressive's evidence is inadmissible. *Id.*  The Court is not persuaded by Plaintiff's arguments challenging the authenticity of Decedent's electronic signature.

Under Federal Rules of Evidence 901, a party may authenticate electronically stored information such as e-signatures by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is," such as "[t]estimony that an item is what it is claimed to be" or "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(a), (b)(1), (9); *see Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542 (D. Md. 2007) (noting "[a] party seeking to admit

11

an exhibit need only make a prima facie showing that it is what he or she claims it to be," which "is not a particularly high barrier to overcome"). Progressive has met the requirements of Rule 901. It submitted the affidavit of Janeen Copic, a representative employed by a member company of the Progressive Group of Insurance Companies, of which Defendant Progressive is a member company, and who has personal knowledge of "the procedures for the purchase of insurance policies directly through our website, www.progressive.com, including specifically, Progressive . . . policy number 958274832 issued to Thomas E. Martin, deceased." ECF 26-4 at 1. Ms. Copic details the policy application process required for Decedent and all insurance applicants, including the e-signature process. *Id.* at 1–2. She explains how Progressive uses DocuSign to maintain electronic records of the e-signatures of its insurance applicants and did so in Decedent's case. She attaches to her affidavit several documents reflecting Decedent's e-signatures, including the DocuSign authentication sheet and Decedent's application, authorization and offer forms, including the UIM Form, each of which includes the signature authentication number from DocuSign's authentication sheet. *Id.* at 2.

The Court finds Ms. Copic's affidavit regarding the process involved to be compelling evidence of the authenticity of Decedent's e-signature, especially considering recent Fourth Circuit precedent. In *Austin v. Experian Information Solutions, Inc.*, the Fourth Circuit found that the district court erred in excluding the affidavit of Experian's affiliate employee based on the affiant's alleged lack of personal knowledge and reliance on hearsay documents. 148 F.4th 194, 200–01 (2025). The Fourth Circuit found the affiant had adequately demonstrated personal knowledge of the enrollment process, terms of use, and whether the enrollee had manifested assent to those terms. *Id.* at 204–

12

05.  Accordingly, the Fourth Circuit held that Experian had met its burden to establish the existence of a binding arbitration agreement.  *Id.* at 209.  While the case in *Austin* involved an arbitration agreement and the admissibility of evidence, the Court finds the holding and the Fourth Circuit's reasoning instructive.  Ms. Copic's affidavit, like the affidavit in *Austin*, demonstrates personal knowledge of the application process and of the authenticity of Decedent's signature adhered to the form.  *See* ECF No. 26-4.  Thus, like in *Austin*, the Court finds Ms. Copic's affidavit is sufficient for Progressive to meet its burden to establish that Decedent viewed and assented to the terms of the UIM Form.

The Court next turns to whether Plaintiff has demonstrated that specific, material facts exist which give rise to a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  As noted above, the Court finds she has not.  At the hearing, Plaintiff referenced her expert's conclusions that he could not conclusively determine whether Decedent signed the UIM Form or whether the UIM Form was altered after it was signed.[7]  Plaintiff's expert

---

[7] Plaintiff did not submit any evidence along with her response to Progressive's Motion.  However, the Court notes that in multiple places Plaintiff incorporates arguments from briefing for other motions in this action, which do cite to evidence.  *See* ECF No. 34 at 2, 4, 27.  Incorporation by reference is highly disfavored by this Court as it is often viewed as an attempt to circumvent the Court's rules on page limits.  *See, e.g.*, *South Carolina v. United States*, 232 F. Supp. 3d 785, 795 (D.S.C. 2017) ("[A]llowing incorporation by reference in such circumstances would defeat the page limitation imposed by the Local Rules"); *Washington v. Fed. Bureau of Prisons*, No. 5:16-CV-03913-BHH-KDW, 2019 WL 2125246, at *2 (D.S.C. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 1349516 (D.S.C. Mar. 26, 2019) (disregarding the defendants' incorporation by reference because the attempted incorporation was improper, especially where defendants had already exceeded the permissible page limitations and allowing incorporation would unnecessarily complicate an already complex motion (citation omitted)).  The Court is not inclined to consider these arguments at all, but regardless, to the extent the Court has already ruled on these motions, it incorporates its rulings by reference.  Furthermore, the Court has thoroughly reviewed the record and finds that the evidence cited by Plaintiff in incorporated filings does not alter its conclusion that there is no genuine dispute of material fact as to whether Decedent signed the UIM Form.

relies heavily on the lack of an original, native form copy of the signed UIM Form in forming his opinion that he can come to no conclusion on whether Decedent signed the UIM Form. ECF No. 26-6 at 3–5. This rationale mirrors the arguments made in Plaintiff's motion to exclude, which the Court rejected at the hearing. *See* ECF No. 33. The Court has found that the documents submitted by Progressive are admissible and properly authenticated so there is no need for "an original, native format." Further, the expert comes to no conclusion about whether Decedent did or did not sign the UIM Form. Plaintiff's expert ultimately concludes that "there is not sufficient information to positively confirm that Decedent . . . was responsible for electronically signing the [UIM [F]orm on May 19, 2022." ECF No. 26-6 at 8. Even drawing all inferences in Plaintiff's favor, the Court finds Plaintiff's expert testimony is insufficient to create a genuine issue of material fact as to whether Decedent signed the UIM Form because it reflects nothing more than the expert's inability to reach any conclusion at all as to the authenticity of Decedent's electronic signature.

The Court likewise finds Plaintiff's reliance on the Video to be unpersuasive. Plaintiff asserts there was no meaningful, written offer of UIM coverage because there is no image in the Video showing Progressive using the form providing an explanation of UIM coverage or giving him quotes for different price levels of UIM coverage.[8] ECF No.

---

[8] Plaintiff also argues "the alleged UIM rejection form does not have [Decedent's] signature. This is obvious. It just has his name printed on it—in a computer typeface. It does not have a signature. It does not have anyone's signature. It is just a computer printing his name on a sheet of paper." ECF No. 34 at 28. The Court notes that Plaintiff submitted her own affidavit averring that this typed signature did not match Decedent's script signature, but this affidavit was not filed with this response and instead was incorporated by reference, which the Court addressed above. Furthermore, at the hearing, Plaintiff's counsel clarified Plaintiff was not arguing that there was anything wrong with electronic signatures and recognized that electronic signatures sometimes

14

34 at 16–17. Plaintiff asserts the video captured the entire transaction, so this is conclusive proof that Decedent did not sign, execute, or return the UIM Form. *Id.* at 5–6, 18, 22–23. Plaintiff also argues that when the Video shows "Your next steps" are to "Complete these requested items (PDF) to avoid a rate increase or policy change," this indicated that the UIM Form had not been completed by Decedent. *Id.* at 24–25. Progressive argues that the video does not capture what occurs on other websites, like DocuSign. ECF No. 36 at 2–3. Progressive points to the evidence it put forward including a signed form dated May 19, 2022, the date of the application and a sworn affidavit from a Progressive Direct representative stating that the Decedent signed the form on May 19, 2022. *Id.* The Court agrees with Progressive. As discussed above, Progressive has put forth ample evidence that the UIM Form was signed by Decedent. Plaintiff's argument that the Video captured the entire transaction is directly contradicted by this evidence and other evidence of record, which demonstrates Decedent had to leave Progressive's website to sign documents through the DocuSign portal. Furthermore, "recent technological advances . . . have made electronic signatures trustworthy, valid, and enforceable," and DocuSign is a "well-recognized online platform for signing and transmitting documents." *Graham v. Hall's S. Kitchens, LLC*, 331 F.R.D. 619, 622 (D.S.C. 2018) (quoting *Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 WL 2088011, at

---

appeared in typeface rather than reflecting an individual script signature and clarified Plaintiff's argument was that Decedent never signed the Form. To the extent Plaintiff argues that because Decedent's signature was inauthentic because it was typeface and to the extent such argument was not expressly waived at the hearing, the Court finds Plaintiff has submitted no evidence that would create an issue of material fact. To the extent Plaintiff argues that Decedent's signature being in typeface demonstrates Decedent never entered the DocuSign portal, the Court addresses this argument below.

*8 (S.D. Tex. May 4, 2018)); *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 256 (4th Cir. 2021).

After considering the affidavits and the documents submitted by Plaintiff and Progressive, the Court finds there is no genuine dispute of material fact that Decedent reviewed, signed, and agreed to bound by the UIM Form. Although Plaintiff claims Decedent never signed the agreement, Progressive has submitted compelling evidence to the contrary. The record evidence shows that Decedent's authenticated digital signature is on the UIM Form, and that Decedent rejected UIM coverage. Accordingly, Progressive has produced a statutorily compliant form that was signed by Decedent, and, thus, "it is conclusively presumed that there was an informed, knowing selection of coverage and . . . the insurance company . . . is [not] liable . . . under the policy for the insured's failure to purchase optional coverage . . . ." S.C. Code Ann. § 38-77-350(B). Because the Court finds that the presumption applies, Progressive is entitled to summary judgment is its favor.

2. *Whether Decedent Purchased UIM Coverage*

Plaintiff also contends that Decedent purchased UIM coverage. Plaintiff asserts the Video recording of Decedent's insurance application process shows Decedent selecting UIM coverage of 25/50/25, choosing an installment plan to pay $923.00 for coverage, and paying the downpayment of $138.50 for this plan. *Id.* at 6–15. While Plaintiff concedes the declarations page shows the "Total 12 month policy premiums and fees" as $912.00 and reflects Decedent rejected UIM coverage, she argues the declarations page mistakenly listed UIM coverage as rejected based on software or website error. *Id.* at 15. Plaintiff also asserts "[t]he [V]ideo . . . is evidence of the contract."

16

*Id.* at 29. Accordingly, Plaintiff asserts Decedent purchased UIM coverage from Progressive.

Progressive contends that this argument is in direct contradiction to the parol evidence rule, which "prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." ECF No. 36 at 2 (citing *Rodarte v. Univ. of S.C.*, 799 S.E.2d 912, 917 (S.C. 2017)). Progressive does not dispute that during the application progressive Decedent selected UIM coverage of 25/50/25 and received a quote for such coverage, but contests that the Video perfectly captured all aspects of the transaction between Decedent and Progressive. ECF No. 36 at 1–2. Progressive asserts that ultimately Decedent decided to reject UIM coverage as reflected in the Policy's declarations page and purportedly signed UIM Form. *Id.* at 2. Progressive further asserts that once Decedent signed the UIM Form rejecting coverage, the UIM Form controls and the parol evidence rule prevents introduction of extrinsic evidence, like the Video, of other agreements or understandings contemporaneous with or prior to execution of the UIM Form. *Id.*

The Court agrees that Plaintiff's reliance on the Video showing Decedent initially selected 25/50/25 coverage is inadmissible parol evidence. As stated above, "[t]he parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." *Rodarte*, 799 S.E.2d at 917 (citations omitted). "'Where an agreement is clear on its face

17

and unambiguous, the court's only function is to interpret its lawful meaning and the intent of the parties *as found within the agreement*.'" *Id.* (citations omitted) (emphasis original).

As outlined above, the evidence of the record demonstrates the UIM Form was executed by Decedent, and he rejected UIM coverage. ECF No. 26-5 at 3. There is no ambiguity as the UIM Form clearly states "Underinsured Motorist coverage is not automatically provided by your insurance policy. Make your selection below," and has checked "I reject Underinsured Motorist Coverage." *Id.* Plaintiff relies on the Video to establish that Decedent and Progressive's agreement actually included UIM coverage of 25/50/25. ECF No. 34 at 6–15. This is the very type of evidence the parol evidence rule excludes. *See, e.g.*, *Sanders v. Allis Chalmers Mfg. Co.*, 115 S.E.2d 793, 795 (S.C. 1960) ("Where parties reduce an agreement to writing, it is to be presumed that the sole agreement of the parties and the extent of the undertaking was included therein, and parol evidence cannot be introduced to contradict it." (citations omitted)). Allowing Plaintiff to rely on Decedent's former selection of UIM coverage that is not reflected in the final agreement between Decedent and Progressive (without any evidence of a technical problem during the digital transaction) would violate controlling rules of contract interpretation in this state. Decedent and Progressive's agreement is clear on its face and unambiguous, thus the Court finds the language of the agreement controlling and rejects Plaintiff's argument that Decedent actually purchased UIM coverage based on extrinsic evidence. Accordingly, there is no UIM coverage and Progressive is entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth above, Progressive's Motion for Summary Judgment [26] is **GRANTED** as to Plaintiff's claim for declaratory judgment.

IT IS SO ORDERED.

                                                        s/ Donald C. Coggins, Jr.
                                                        United States District Judge

September 25, 2025
Spartanburg, South Carolina